

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 18, 2023

**VIA ECF**
Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re: <u>United States v. Donato Poliseno</u>, 20 Cr. 163 (PKC)

Dear Judge Castel:

  Donato Poliseno ("Poliseno" or the "defendant") fraudulently used the veterinary licenses of complicit veterinarians to obtain and widely disseminate adulterated and misbranded drugs marketed to racehorse trainers, including drugs designed to have performance-enhancing effect. Poliseno distributed and offered for sale, both, bespoke drugs created by co-defendant Louis Grasso, and prescription drugs that could only be distributed pursuant to a valid prescription. Poliseno's violations were not mere technical infractions. Poliseno so abused his position that he sought to use a deceased veterinarian's credentials to continue ordering prescription drugs. Poliseno was well aware of the state and federal regulations regarding the distribution of such drugs. He was well aware that what he was doing was wrong. Yet Poliseno persisted. The drugs he distributed were not manufactured in sanitary, government-approved facilities; they had not been tested and approved for use in animals by the Food and Drug Administration ("FDA"); they were not distributed pursuant to lawful prescriptions; nor were they properly labeled with, among other things, manufacturer information, directions for use, ingredients, or other details designed to ensure that users can mitigate adverse reactions to particular drugs.[1]

  Given the harm his conduct posed to the receiving animals, the nature of his offense conduct, the need to protect the public, and the need for general deterrence, a sentence to some term of imprisonment is warranted in this case.

---

[1] For example, the ingredients of a particular drug are relevant for human or animal patients with allergies, a history of negative reactions to a particular substance, or are receiving other medications that may cause an unexpected side effect when interacting with the drugs sold by Robinson.

I. **Offense Conduct**

Poliseno ran a pharmaceutical company, Equine Vet Supplies LLC, in which he advertised and offered for sale to racehorse trainers and others in the racehorse industry a bevy of drugs, which Poliseno marketed for sale direct-to-consumer, without a legally-mandated prescription issued by a veterinarian. The prescription requirement is designed to ensure the health of the animals receiving drugs. In that manner, Poliseno was a conduit between bulk drug manufacturers and consumers, creating a pipeline for trainers to receive prescription drugs that would otherwise require issuance by a licensed veterinarian. In that manner, Poliseno armed trainers with the tools to abuse and misuse drugs at their discretion.

Poliseno's conduct was particularly pernicious because he operated under the auspices of a legitimate pharmacy and took steps to "paper over" his illegal conduct by making it appear that the drugs Poliseno and his staff ordered were acquired at the behest of a licensed veterinarian. Poliseno's pharmaceutical business served as further cover for Poliseno to sell the adulterated and misbranded drugs produced and sold by Grasso, which included pain blockers, bronchodilators to improve a horse's breathing during a race, and other drugs designed to enhance a horse's race performance. *See* Presentence Investigation Report ("PSR") ¶ 15, 19, 23. In so distributing drugs, Poliseno undertook no measures to ensure the safety of the drugs he sold for Grasso and disregarded the medical necessity or propriety of distributing drugs in bulk without valid prescriptions to racehorse trainers motivated to win.

Poliseno resorted to extreme measures to continue his crimes. Poliseno's flagrant disregard for legal requirements is best illustrated by his insistence on using a dead veterinarian's license. For years, Poliseno had misused the license of a Delaware-based veterinarian ("Vet-1") to order prescription drugs in bulk, for the purpose of reselling them to end-users without prescriptions. *See* PSR ¶ 15. On October 11, 2019, the defendant learned that Vet-1 had died, and he immediately called Grasso—not to lament the death of his business partner or friend—but to discuss how to proceed because Poliseno could no longer "buy [drugs] through any suppliers or anything under [Vet-1's] license," which put Poliseno "in a lot of trouble." Exhibit A at 2. During the course of that conversation, Poliseno discussed the likelihood that he would be caught by drug suppliers if he continued to use Vet-1's license to bulk order drugs. Poliseno and Grasso further discussed how long Poliseno could continue ordering drugs without detection. During the course of that conversation, Poliseno expressed his awareness of various licensing regimes that govern the purchase and dissemination of drugs, making it abundantly clear he knew that his actions were prohibited. *See id.* at 2-3. Following that conversation, Poliseno proceeded to order drugs using Vet-1's license from a number of drug suppliers. In particular, Poliseno's staff placed an order for drugs from a veterinary supplier on October 14, 2019, days after Poliseno learned that Vet-1 had passed. *See* Exhibit B. The supplier wrote back that they "were unable to process the prescription" because "of Vet-1's passing[.]" *Id.* The response was scathing: "you will never get my bus. [business] when I get back go to hell[.]" *Id.* In other instances, suppliers did not detect any issue, and sold Poliseno the drugs he and his staff had illegally ordered.

II. **<u>Procedural History</u>**

On February 26, 2020, the defendant was indicted with engaging in a conspiracy to manufacture, distribute, administer, and/or receive adulterated and misbranded PEDs intended for use on racehorses, and to secretly administer those PEDs to racehorses under scheme participants' control, with the intent to mislead and defraud various people and entities, including federal and state drug and horse racing regulators. ECF No. 1.

On May 17, 2022, the defendant appeared before Your Honor remotely and pleaded guilty, pursuant to a plea agreement, to the Superseding S6 Information, charging Poliseno with one count of a substantive violation of the Food Drug and Cosmetic Act ("FDCA"). Poliseno's change of plea followed this Court's denial of the defendants' pre-trial motion to dismiss, to suppress the wiretaps and its derivative fruits, to compel discovery, and for a bill of particulars, and within months of the scheduled trial. *See* ECF Nos. 127, 128, 131, 132.

III. **<u>Sentencing Factors</u>**

a. **Applicable Law**

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### b. Discussion

The 18 U.S.C. § 3553(a) factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate general and specific deterrence. A sentence to some term of imprisonment is necessary to serve those goals.

First, the extent of the defendant's offense conduct, including the steps he took to mislead others, were serious. For years, the defendant chose to ignore the risks involved in distributing drugs that were administered to animals without regard to the medical necessity of administering such drugs, without the oversight of a licensed veterinarian, and without seeking requisite FDA approvals to ensure the drugs Poliseno sold on behalf of Grasso were safe. Poliseno defiantly and persistently engaged in the conduct. This was not "a serious lapse in his better judgment." Def. Sent. Subm. at 1. The defendant's crimes were not an isolated "aberration," confined in time and scope. *Id.* at 12. Poliseno engaged in the criminal conduct persistently, over the course of approximately five years, and in the face of significant obstacles. Poliseno's use of a veterinarian's license without consent and—most egregiously—even after that veterinarian was deceased, indicates that Poliseno knew precisely that his conduct was illicit, took extensive and varied measures to make his crime difficult to detect, yet did *not* take steps to ensure compliance with the law. The seriousness of his conduct merits a serious sentence.

Second, the defendant's actions carried serious risks to the health of the horses who were administered those drugs. There is inherent risk in distributing prescription medications to racehorse trainers indiscriminately without veterinary oversight. Poliseno took these actions to sustain his business. He was callously indifferent to the medical risks inflicted on the animals that were administered his drugs, or to the laws and regulations designed to mitigate and prevent such risks.

Finally, a sentence to some term of imprisonment is necessary to afford adequate general deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Poliseno and his co-conspirators enabled the hazardous and illegal dissemination of unnecessary medications to racehorses under the assumption that no serious consequences will follow if they are ever caught. Seemingly legitimate pharmacies are afforded deference and the presumption of regularity regarding the manner in which drugs are disseminated. The defendant exploited that position of public trust. Corrupt actors in the pharmaceutical industry, like the defendant, have enabled the hazardous and illegal administration of unnecessary medications to animals with the goal of lining their own pockets, and under the assumption that no serious consequences will follow if they are ever caught. Many in the industry, like the defendant, have grown indifferent to, and dismissive of, the notion of obtaining illegal drugs to medicate racehorses for profit. Imposing a substantial sentence here would send a strong signal to others thinking of engaging in such criminality that there will be consequences for their crimes. It will likewise counter the view that such conduct is inconsequential, and is not subject to serious punishment.

**IV.** **Conclusion**

The Government respectfully submits that a sentence to some term of imprisonment is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing set forth in Title 18, United States Code, Section 3553(a).

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _/s/Sarah Mortazavi_____
Sarah Mortazavi
Assistant United States Attorney
252-637-2520

cc: Louis M. Freeman, Esq. (by ECF)